793 F.2d 1293
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
NOEL E. SULLIVAN, Plaintiff-Appellant,
v.
KENTON COUNTY, KENTUCKY; CITY OF EDGEWOOD, KENTUCKY;
NORTHERN KENTUCKY AREA PLANNING COMMISSION; JAMES A.
DRESSMAN, JR.; DONALD P. GRAVEN; GEORGE R. LIGHTNER; PAT
LIGHTNER; JERRY N. WARNING; a/k/a JEROME H. WARNING; RUTH T.
WARNING; ROBERT B. PIKAR; LOIS PIKAR, Defendants-Appellees.
 84-6061
 United States Court of Appeals, Sixth Circuit.
 5/16/86
 
 Before: ENGEL, KENNEDY and MILBURN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-Appellant appeals from the dismissal with prejudice of his pendent state law claim and from the District Court's order requiring appellant to pay one half of the fees of an expert witness appointed by the court.
 
 
 2
 Appellant filed a complaint in the United States District Court for the Eastern District of Kentucky in 1980, and an amended complaint in January 1981. The action was brought against Kenton County, Kentucky; the City of Edgewood, Kentucky; the Northern Kentucky Area Planning Commission; James Dressman, Jr., Judge/Executive of Kenton County, Kentucky; and certain other individuals including appellant's neighbors, George and Patricia Lightner, who are the sole appellees.[1] Appellant alleged several federal claims, all arising under 42 U.S.C. Secs. 1983, 1985, and 1986 and the fifth and fourteenth amendments to the Constitution. Appellant alleged that the city and county, by building a road without storm sewers, had caused great quantities of water and debris to wash down on appellant's real estate, and thus effected a taking of appellant's property without just compensation. The complaint also alleged the fifth and fourteenth amendments were violated when different combinations of the other defendants conspired to: (1) install a curb along the road which had a similar effect on the property; (2) construct a paved parking lot without storm sewers near appellant's property which had a similar effect; (3) construct a swimming pool, which, by acting as a dam, had the same effect; and (4) build a fence on plaintiff's property.
 
 
 3
 Appellant also alleged two counts based on state law: (1) that George Lightner maliciously defamed appellant by falsely charging him with having committed a criminal offense; and (2) that George Lightner maliciously swore a criminal complaint against appellant charging appellant with the same offense.
 
 
 4
 The parties and the court were able to work out a settlement that resolved most of the claims. The District Court entered an 'Agreed Order' on June 15, 1984, which all the parties approved. It ordered appellant and appellees to execute the necessary easements to enable the county to construct (at the county's expense) a storm line sewer 'along the approximate property line' of appellant and appellees, and to execute mutual releases for any and all past and present water damage claims arising among them. The order also stated that the court would order a surveyor to prepare a survey of the property to determine the boundary line between appellant and appellees. Unfortunately, one of the sentences, which apparently deals with the finality of the surveyor's determination, is missing some words or punctuation:
 
 
 5
 If the parties Sullivan and Lightner agree upon the findings of the expert, the parties shall execute the necessary deeds of conveyance or settlement documents conforming to the findings of the expert, this Court will set a trial date for trial of the boundary dispute.
 
 
 6
 Appellant and appellees agree that the Order was meant to provide for trial of the boundary dispute if both sides did not accept the expert's findings. Finally, the order provided for the dismissal of all other claims among the various parties to the action and divided up $1,000 (a settlement offer by the city) between appellant and appellees.
 
 
 7
 The court's next order was filed August 16, 1984. It stated that a status conference had been held on August 14, 1984. It noted that the only remaining issue was the proper location of the boundary between appellant and appellees.
 
 
 8
 The court will neither use its time nor that of the U.S. Magistrate in resolving this boundary dispute. However, as an accomodation [sic] to the parties, the court will retain jurisdiction over this matter and appoint a Special Master if all parties are in agreement to such an arrangement.
 
 
 9
 The court having heard counsel and having been sufficiently advised,
 
 
 10
 IT IS ORDERED that Mr. David K. Noran, P.E., pursuant to his duties as court appointed expert, shall run a line along the subject properties which represents his best opinion as to the proper location of the property boundary, and shall file a report with this court immediately thereafter, along with his statement of account.[2]
 
 
 11
 The court issued its final order on October 30, 1984. It stated, in total:
 
 
 12
 This matter being before the court on the report of the court appointed expert, David K. Noran, P.E., (attached) and the court being advised,
 
 IT IS ORDERED as follows:
 
 13
 1. That the report of the court appointed expert, David K. Noran, P.E., and the statement of his services rendered in the amount of $1,334.20, be, and they are, hereby ordered filed of record in this matter;
 
 
 14
 2. That the cost of Mr. Noran's services, that is, $1,334.20, be divided as follows: Noel E. Sullivan to pay 1/2 of the fee, and George and Pat Lightner to pay the remaining 1/2 of the fee; and
 
 
 15
 3. That this matter be, and it is, hereby dismissed, with prejudice.
 
 
 16
 Appellant first complains that the boundary line dispute, which is essentially a matter of state law, should not have been dismissed with prejudice. Appellant and appellees agree that the court had power to preside over the boundary dispute under the doctrine of pendent jurisdiction. Appellant argues that the court should have either decided the dispute or dismissed it without prejudice. We agree and remand the action for further proceedings.
 
 
 17
 It is unclear why the court dismissed the matter with prejudice. Even assuming that Noran's survey actually sets a boundary line, appellant was given no opportunity to dispute the survey. The settlement agreement reserved the right to appellant to some sort of hearing to dispute the survey results. The August 1984 Order stated that the court would appoint a special master if the parties were in agreement. That is the last mention of a special master; apparently none was appointed. Thus, appellant never had a trial, with or without a master. Noran's report was filed the same day the District Court entered final judgment. The dismissal with prejudice without a trial of the disputed issues regarding the boundary was error. We therefore vacate the judgment of dismissal.
 
 
 18
 On remand, the District Court may consider whether it wishes to retain pendent jurisdiction. Appellant's complaint only raises the property line dispute in the context of a federal claim of a taking of property. The taking claim depends on state action, but all of the claims against the state defendants have been settled out. All that remains is a private dispute between adjacent landowners. In its current posture therefore, the dispute has no federal aspect. Under the doctrine of pendent jurisdiction, the District Court has the discretion not to resolve the boundary dispute. See United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). In choosing whether to hear the matter, the court should keep in mind considerations of judicial economy, convenience and fairness to the litigants in this five-year old lawsuit. Id. If the court decides not to exercise jurisdiction, dismissal should be without prejudice. Id. at 726-27.
 
 
 19
 If the court exercises jurisdiction over the boundary dispute and desires to appoint a master, it should be mindful of the requirements of Rule 53 of the Federal Rules of Civil Procedure.
 
 
 20
 Appellant also complains of the court's award of the surveyor's expert witness fee. We note that the parties did not object to the appointment of the expert witness; the order recites that he was appointed with their consent and that the parties would split his fee. The expert witness had performed the services assigned. The parties will not be heard to complain now, for the first time, that the court was incorrect in concluding that the parties would split the fees related to resolution of the pendent issue. Appellant did not complain of the reasonableness of the fee.
 
 
 21
 Furthermore, the court's order is permitted by Rule 706(b) of the Federal Rules of Evidence. The rule states that compensation for court appointed expert witnesses 'shall be paid by the parties in such proportion and at such time as the court directs . . ..' Appellant mistakenly relies on a statement in the rule that the compensation is also payable from funds that may be provided by law in 'proceedings involving just compensation under the fifth amendment.' The District Court did not appoint Noran to help resolve a just compensation/fifth amendment dispute. By the time Noran was appointed, the parties had agreed to a settlement of the federal taking claims. This agreement was reached in late November 1983. See Agreed Order, June 15, 1984. Rather, as noted above, Noran was appointed to resolve a boundary dispute between two private parties.
 
 
 22
 The judgment of the District Court is affirmed insofar as it orders the parties to pay the expert witness fees. The judgment of dismissal is vacated and the action is remanded to the District Court for further proceedings consistent with this opinion.
 
 
 
 [1]
 Although appellant purports to include all of the original defendants as appellees, an Agreed Order signed by the parties on June 15, 1984, see infra, dismisses all claims involving those defendants. Appellant did not appeal that order
 
 
 [2]
 The court had already appointed Noran, pursuant to Federal Rule of Evidence 706, 'to act as court-appointed expert and make a survey of the property involved to determine the platted location of the boundary line between the Sullivans and Lightners.' December 6, 1983 Order